UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| XAVIER HEMPSTEAD,<br>c/o Gerhardstein & Branch Co. LPA<br>432 Walnut Street, Suite 400<br>Cincinnati, OH 45202,<br><br>        Plaintiff,<br><br>  v.<br><br>ROBERT MILES,<br>c/o Cleveland Police Department<br>1300 Ontario St.<br>Cleveland, Ohio 44113,<br>*Individually and in his official capacity as an employee of the City of Cleveland, Ohio,*<br><br>and<br><br>CITY OF CLEVELAND,<br>1300 Ontario St.<br>Cleveland, Ohio 44113.<br><br>        Defendants. | Case No. 1:15-cv-2528<br><br>Judge<br><br><br><br><u>**CIVIL COMPLAINT AND JURY DEMAND**</u> |

**I. PRELIMINARY STATEMENT**

1.  This civil rights case challenges as excessive force, the shooting of Plaintiff Xavier Hempstead by Defendant Cleveland Police Officer Robert Miles on December 10, 2013. Mr. Hempstead was parked near his mother's house peacefully using his cell phone when Defendant Miles shot him in the back through the rear driver's side window of his SUV. Mr. Hempstead was unarmed and not threatening anyone at the time he was shot. Mr. Hempstead brings this civil rights action to secure fair compensation and to encourage Officer Miles and other

Cleveland police officers to refrain from the unnecessary use of deadly force against unarmed civilians in the future.

## II. PARTIES

2. Plaintiff Xavier Hempstead is and was at all relevant times a black resident of the State of Ohio and this judicial district. He brings this action on his own behalf.

3. Defendant Robert Miles was at all times relevant to this action a white police officer employed by the City of Cleveland, Ohio. Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law. He is sued both in his individual and official capacity.

4. Defendant City of Cleveland, Ohio, is a unit of local government organized under the laws of the state of Ohio. Defendant City of Cleveland is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

## III. FACTS

**A. Events Leading up to Defendant Miles' Shooting of Mr. Hempstead**

5. The police shooting giving rise to this lawsuit happened on Emery Avenue in west Cleveland. Mr. Hempstead has lived on Emery Avenue, along with his mom, grandfather, and siblings at various times for many years. His grandfather was a World War II veteran and helped build the homes on Emery Avenue where he, his children, and grandchildren lived. Mr. Hempstead was very close with his grandfather, and was part of the support network that cared for him before he passed away at 92 in May 2015. Mr. Hempstead is close with many people in the neighborhood.

6. On the evening of Tuesday, December 10, 2013, Xavier Hempstead was driving away from his mother's house on Emery Avenue in a black SUV.

7. He was unarmed and had no weapons in his vehicle.

8. He received a text messages and pulled over to the side of the road to respond.

9. There was music playing in his car.

10. Unbeknownst to Mr. Hempstead, a number of Cleveland police officers, including Defendant Miles, were in the area looking for a black SUV.

11. The police officers were acting in collaboration with a confidential informant (CI), who was a suspect in a burglary and theft of an assault rifle and a shotgun.  The CI had supposedly arranged for a third party – an undercover officer - to purchase the weapons from someone in a Black SUV in the area of Emery Avenue.

12. After the buy the original plan was to arrest the seller of the weapons at the site of the buy.

13. Two marked zone cars and two unmarked police vehicles were trolling the area looking for a black SUV.

14. Detectives Miles and Todd Staimpel were in an unmarked car.  Det. Staimpel was driving and Det. Miles was in the front passenger seat.  They were both dressed in street clothes.

15. When the officers located the black SUV occupied by Mr. Hempstead, the commanding officer, Sgt. Keith Haven, abandoned the original plan.  Instead of attempting the purchase, Sgt. Haven directed the officers in the area to proceed to the vehicle and arrest the driver.

**B.     Defendant Miles Shoots Mr. Hempstead without Justification**

16. Detectives Staimpel and Miles approached Mr. Hempstead from the rear, and were the first to reach his vehicle.  Detective Staimpel parked their unmarked vehicle in Mr. Hempstead's blind spot.  Detectives Staimpel and Miles exited their vehicle and both approached the driver's side of Mr. Hempstead's vehicle.

17. At this time, Mr. Hempstead was preoccupied with his phone. He was listening to music through the car stereo.

18. Out of his peripheral vision, Mr. Hempstead saw something on the driver's side of his car. When he looked up he saw a gun pointed at him.

19. Det. Miles was standing within five feet of the SUV holding his service weapon.

20. Det. Miles then discharged his weapon twice through the rear passenger window of the SUV.

21. A bullet hit Mr. Hempstead in the left rear shoulder blade and exited through the top of his shoulder near his collar bone. A bullet pierced the back of his neck and became lodged there.

22. Mr. Hempstead's scapula bone was fractured and metal shrapnel was deposited in the muscles along his spine. To this day, a bullet remains in his neck.

23. Mr. Hempstead threw himself down over the center counsel and drove off with his head below the dashboard to protect himself.

24. Terrified, he drove for a short distance until he became worried he would bleed out. He pulled into a gas station and parked his car.

25. He exited from the driver's side door and laid down on the ground.

26. At that time, officers approached and took him into custody.

27. Mr. Hempstead was unarmed, no weapons were in his SUV, and at no time did he discard weapons from his SUV while driving to the gas station.

28. Mr. Hempstead was prosecuted for failure to comply with a police order and fleeing the scene. Mr. Hempstead only drove away from police officers because Defendant Miles shot him. Mr. Hempstead hired a criminal defense lawyer to represent him. Mr. Hempstead was acquitted by a jury.

29.     The shooting was investigated by the City of Cleveland's Use of Deadly Force Investigation Team.  The subject of the investigation was "felonious assault on a police officer / on-duty shooting / failure to comply / arrest / confinement."  The investigation classified Xavier Hempstead as the "suspect" and Detectives Miles and Staimpel as the "victims."  The investigation found no wrongdoing by the "victim" shooter, Defendant Miles.

30.     After the investigation, Defendant Miles was never counseled, disciplined, or re-trained as a result of his use of force on Mr. Hempstead.

**B.      Policies, Customs, and Culpable Conduct**

31.     Defendant City of Cleveland's policies, practices, customs, and usages regarding use of force were the moving force behind Defendant Miles' use of force and proximately caused Mr. Hempstead's injuries.

32.     In 2012, just the year prior to this incident, Defendant Miles was sued by another citizen, James Malcolm, for using excessive force. *See Malcolm v. Davidson et. al*, U.S.N.D. Case No. 1:12-cv-00562-CAB (Mar. 7, 2012).  Prior to filing his lawsuit, Mr. Malcolm complained to the City of Cleveland about Defendant Miles' actions.  The City found Mr. Malcolm's complaint to be unfounded, and did not discipline, retrain, or counsel Defendant Miles' about his use of force. The City later agreed to a settlement with Mr. Malcolm. This prior lawsuit put the City on notice that Defendant Miles had a practice of using excessive force, yet the City did nothing to prevent him from using excessive force in the future.

33.     Defendant City of Cleveland's unconstitutional policies, practices, customs, and usages regarding use of force were recently verified by the United States Department of Justice (DOJ)

which released an investigative report regarding the Cleveland Police Department (CPD) in December 2014 that "revealed a clear pattern or practice of use of excessive force by officers."[1]

34. Defendant City of Cleveland has a policy, practice and custom of allowing the use of deadly force on unarmed non-dangerous suspects. The DOJ "determined that, as part of the pattern or practice of excessive force, officers fire their guns in circumstances where the use of deadly force is not justified, including against unarmed or fleeing suspects who do not pose a threat of serious harm to officers or others."[2] That policy, practice and custom was the moving force behind the excessive force used against Xavier Hempstead and proximately caused his injuries.

35. Defendant City of Cleveland has a policy, practice and custom of failing to supervise officers to reduce excessive force, and failing to train officers to resolve encounters with citizens without using excessive force. Defendant has been on notice that this policy is inadequate since 2002, when the Department of Justice wrote a letter to the City of Cleveland recommending many changes to its use of force policies and training. Then again, in August 2013, the Police Executive Research Forum recommended significant changes to the City of Cleveland's policy, training, and supervision concerning the use of force. That policy, practice and custom was the moving force behind the excessive force used against Xavier Hempstead and proximately caused his injuries.

36. The Department of Justice noted in its report, "Our review of reports and investigations of officers' use of force, both deadly and less lethal, revealed that CDP officers lack some of the basic support, skills, and knowledge required to safely and effectively respond to situations that

---

[1] United States Department of Justice Civil Rights Division, *Investigation of the Cleveland Division of Police*, Dec. 4, 2014, at p. 9, available at http://www.justice.gov/sites/default/files/opa/press-releases/attachments/2014/12/04/cleveland_division_of_police_findings_letter.pdf .
[2] *Id*. at p. 13.

commonly arise in law enforcement encounters."[3] Furthermore, "[CDP's failure to ensure proper training] has contributed to the pattern or practice of excessive force that we identified and has placed officers and the community in danger."[4]

37. Defendant City of Cleveland has a policy, practice and custom of failing to adequately investigate and discipline police officers who use excessive force on citizens. This policy, practice and custom was the moving force behind the excessive force used against Mr. Hempstead and proximately caused his injuries.

38. The Department of Justice identified this deficiency in its report, stating, "Our review found that several of CDP's systems for investigating and holding officers accountable for the use of excessive force are flawed, including Internal Affairs, the Use of Deadly Force Investigation Team, and the Tactical Review Committee. In some cases, these flaws prevented the Division from holding officers accountable for serious misconduct."[5] The report indicates that "[d]iscipline is so rare that no more than 51 officers out of a sworn force of 1,500 were disciplined in any fashion in connection with a use of force incident over a three-and-a half-year period."[6] This failure to investigate and discipline the use of excessive force has led officers to believe that they are authorized to use excessive force with impunity.

39. These policies, practices, and customs directly and proximately resulted in the shooting of Xavier Hempstead, an unarmed man. As the Department of Justice noted:

> CDP's pattern or practice of excessive force is both reflected by and stems from its failure to adequately review and investigate officers' uses of force; fully and objectively investigate all allegations of police misconduct; identify and respond to patterns of at-risk behavior; provide its officers with the support, training, supervision, and equipment needed to allow them to do their jobs safely and

---

[3] *Id*. at p. 42.
[4] *Id*. at p. 43.
[5] *Id*. at p. 34.
[6] *Id*. at p. 5.

7

effectively; adopt and enforce appropriate policies; and implement effective community policing strategies at all levels of CDP.[7]

40. The City of Cleveland became responsible for Officer Miles' excessive force when it failed to meaningfully investigate Officer Miles' use of deadly force against Mr. Hempstead, failed to discipline Officer Miles for his excessive use of force, and thus ratified Officer Miles' conduct.

**C. Harm to Plaintiff**

41. Plaintiff Hempstead never would have driven away from the scene had Defendants approached him appropriately and not used excessive force. As a proximate result of their actions he was charged with a crime and had to suffer the embarrassment, inconvenience and expenses of defending himself in court

42. Plaintiff Hempstead was severely harmed due to the gunshot wounds. He has suffered severe pain, endured medical procedures, suffered extreme fear and distress, and will likely suffer permanent physical injuries and scarring.

## IV. FIRST CAUSE OF ACTION – CLAIM FOR EXCESSIVE FORCE (42 U.S.C. § 1983)

43. Defendants have, under color of law, deprived Xavier Hempstead of rights, privileges, and immunities secured to him by the United States Constitution including the right to be free of unreasonable seizures under the Fourth Amendment as applied to the States through the Fourteenth Amendment.

## V. JURY DEMAND

44. Plaintiff requests a jury trial on all claims triable to a jury.

---

[7] *Id*. at p. 3.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Award Plaintiff compensatory damages in an amount to be shown at trial;

B. Award punitive damages against the Defendant Miles (not the City of Cleveland) in an amount to be shown at trial;

C. Award Plaintiff reasonable attorney's fees, costs and disbursements under 42 U.S.C. § 1988;

D. Award Plaintiff prejudgment interest;

E. Grant to the Plaintiff such additional relief as the Court deems just and proper.

            Respectfully submitted,

            s/ Adam G. Gerhardstein
            Alphonse A. Gerhardstein (0032053)
            Trial Attorney for Plaintiff
            Jennifer L. Branch (0038893)
            Adam Gerhardstein (0091738)
            Attorneys for Plaintiff
            Gerhardstein & Branch, Co LPA
            432 Walnut Street, Suite 400
            Cincinnati, Ohio 45202
            (513) 621-9100
            Fax (513) 345-5543
            agerhardstein@gbfirm.com
            jbranch@gbfirm.com
            adamgerhardstein@gbfirm.com